# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AKINBO J.S. HASHIM,
also known as John D. Tiggs, Jr.,
    Plaintiff,

    v.                                                               Case No. 14-C-1265

GARY HAMBLIN, et al.,
    Defendants.

## DECISION AND ORDER

The plaintiff, a Wisconsin state prisoner, filed a pro se complaint under 42 U.S.C. § 1983, alleging that defendants violated his civil rights. On December 18, 2014, I denied the plaintiff's motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(g). Plaintiff subsequently paid the full filing fee. On April 22, 2015, I screened the 126-page complaint, which sues 40 named defendants and John Does 1-100. See 28 U.S.C. § 1915A. Citing Kadamovas v. Stevens, 706 F.3d 843 (7th Cir. 2013), I determined that the complaint was too long. I provided the plaintiff with an opportunity to file an amended complaint using the court's form complaint. See Civil L.R. 9 (E.D. Wis.). I directed that the plaintiff should limit his complaint to the form complaint and that he could submit up to five additional pages if needed. I also advised the plaintiff that he could not join unrelated claims against different defendants in a single lawsuit. In the April 22, 2015 order, I also denied the plaintiff's motion for a temporary restraining order and a preliminary injunction, and I denied his motion for reconsideration of my December 18, 2014, order denying his motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915(g).

The plaintiff did not file an amended complaint. Instead, he filed a motion objecting to the April 22, 2015 screening order and for related relief (ECF No. 25). He also filed a motion for reconsideration of the screening order (ECF No. 26). Next, the plaintiff filed a motion for recusal (ECF No. 28), and a motion for extension of time to file an amended complaint (ECF No. 29). Lastly, the plaintiff filed a motion to appoint counsel (ECF No. 30). I will address these motions below.

I.   Motion Objecting to Order Entered on April 22, 2015

In this motion, the plaintiff objects to my last screening order to the extent that it required him to file an amended complaint using the court's form complaint and up to five additional pages. The plaintiff contends that, given that the complaint includes five counts spanning three years and names over forty defendants, it would be virtually impossible to fit his claims into that amount of space and also state plausible claims for relief. He proposes that he submit an amended complaint limited to fifteen to twenty pages per claim. He also points out that I did not explain to him precisely why I found his lengthy complaint unintelligible and did not give him sufficient guidance as to what to include in his amended complaint. Having reviewed the plaintiffs motion, I now agree that requiring him to file a new complaint that is limited to this district's form complaint and five additional pages is not the best way to proceed. Rather, I will simply screen the existing complaint, a task to which I now turn.

An initial problem is that the complaint attempts to join unrelated claims against different defendants into a single suit, in violation of the rules of civil procedure governing joinder of claims and parties. See Fed. R. Civ. P. 18, 20(a)(2). Under those rules, "[u]nrelated claims against different defendants belong in different suits," not only to

prevent bloated complaints such as the one Hashim filed, but also to ensure that prisoners do not use joinder to circumvent the limitations of the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Hashim's complaint is divided into five "counts," and each count contains a number of different claims against various defendants arising out of his confinement at Green Bay Correctional Institution ("GBCI"). (The plaintiff is currently confined at the Wisconsin Secure Program Facility ("WSPF").) The claims included in Counts I–III are generally related, in that they involve a series of events surrounding a set of "security precautions" imposed on Hashim while he was confined in a segregation unit. These claims arise out of the same series of transactions or occurrences and will involve at least one common question of law or fact, and thus the defendants to these claims are properly joined under Rule 20(a)(2). However, the claims included in Counts IV and V are not related to the claims in Counts I–III and are not related to each other. The events described in Counts I–III occurred between March 2010 and August 2010. Count IV describes events that began at the end of March 2011—mainly a series of allegedly unlawful actions taken by a "Captain Brant," who is not a defendant to the claims asserted in Counts I–III. Count V describes a series of events that occurred between May 13, 2011 (Compl. ¶ 268) and August 2013 (Compl. ¶ <u>375</u>[1]). Count V alleges, among other things, that (a) certain

---

[1] A numbering error occurs on pages 116–17 of the complaint. The last numbered paragraph on page 116 is 393, and the first numbered paragraph on page 117 is 344. This has resulted in the complaint containing two paragraphs corresponding to each number between 344 and 384. To make clear which paragraph in this range I am citing, I have underlined the number if it is the second paragraph corresponding to the number. Thus, ¶ <u>375</u> means the paragraph that appears on page 123 of the complaint, not the paragraph that appears on page 113.

3

defendants unlawfully prevented the plaintiff from serving as a jailhouse lawyer by unreasonably interpreting orders issued by state and federal courts, (b) certain other defendants discontinued the Department of Corrections' inmate-to-inmate legal mail system in order to retaliate against the plaintiff, (c) still other defendants violated the plaintiff's rights by assigning him a violent cellmate, and (d) other defendants denied him access to the courts by denying him legal loans. Although some of the claims within Count V might be related to each other, they are not related to the claims in Counts I–III or to the claims in Count IV, and they purport to join as defendants parties who are not defendants to the other counts.[2]

For these reasons, I will dismiss the claims in Counts IV and V from this case. The dismissal will be without prejudice to the plaintiff's filing new lawsuits corresponding to each group of related claims. If the plaintiff wishes to pursue all of his claims against all of the defendants, he will likely need to file at least two additional suits—one for the claims in Count IV, and one for the claims in Count V. I express no view as to whether all of the claims within Count IV may be included in a single lawsuit or whether all of the claims in Count V may be included in a single lawsuit. I also express no view on whether any of the claims in Counts IV and V have merit or would survive screening.

---

[2]The plaintiff might contend that all of the claims in all five counts are related because they are all part of a conspiracy to violate his rights that spanned three-and-one-half years and involved all 140 defendants. However, if this is the case, I reject his allegation of conspiracy on the ground that it is implausible. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544 2007). The complaint contains no facts giving rise to a reasonable inference that all 140 defendants (or even only the 40 named defendants) were part of a single conspiracy to violate the plaintiff's rights or that every event described in the complaint was part of such a conspiracy.

4

Because the claims in Counts I–III are properly joined, I will now review them to determine whether they state claims for relief. The first claim is a claim for retaliation against Sergeant Preberg. In this claim, Hashim contends that Preberg wrote a false conduct report against him as retaliation for initiating an administrative grievance. See Compl. ¶¶ 38–47. This is a valid claim against Preberg and may proceed. See, e.g., Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010) (elements of First Amendment retaliation claim).

The second claim relates to a set of "security precautions" that defendant Erickson imposed on the plaintiff while he was in segregation. See Compl. ¶ 49. The plaintiff alleges that Erickson issued the security precautions after learning about the conduct report authored by Preberg. The plaintiff notes that he was eventually found not guilty of the conduct Preberg accused him of, but that Erickson nonetheless decided to leave the security precautions in place.

The plaintiff seems to contend that the security precautions implicated a liberty interest and therefore could not be imposed unless he was afforded due process, which he contends he was not. However, the security precautions could implicate a liberty interest only if they imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 484 (1995). I conclude that the security precautions, as written, did not impose such a hardship.[3] The security precautions provided as follows: (a) whenever the plaintiff was removed from his cell, a security

---

[3]As discussed below, certain defendants may have applied the security precautions against the plaintiff in a manner that violated his rights. However, for the moment I am assessing only whether the security precautions, as written, implicated a liberty interest.

5

supervisor would be present with an "intermediate weapon," (b) cleaning supplies could be used only under the direct supervision of security staff, (c) the plaintiff would be required to write with a crayon rather than a pen, (d) the plaintiff would be required to use a "finger toothbrush" rather than a regular toothbrush, and (e) the plaintiff would have to go to the back of his cell and kneel down whenever the "trap" of his cell was opened. Compl. ¶ 49. These restrictions, although likely unpleasant, are "too limited to amount to a deprivation of constitutional liberty." Miller v. Dobier, 634 F.3d 412, 415 (7th Cir. 2011). Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive. See, e.g., Wilkinson v. Austin, 545 U.S. 209 223–24 (2005) (inmate denied human contact and subjected to lights during every hour of confinement); Gillis v. Litscher, 468 F.3d 488, 490–91, 493–94 (7th Cir.2006) (inmate in "Behavioral Modification Program" denied any bedding or clothing and deprived of nearly all human contact or sensory stimulation); Westefer v. Snyder, 422 F.3d 570, 589 (7th Cir.2005) (inmate subjected to severe limitations on contact with others, showers, exercise, attorney visits, and access to personal property). Thus, defendant Erickson is not liable for promulgating the security precautions without affording the plaintiff due process.

The plaintiff's next set of claims relates to how certain correctional officers applied the security precautions against him. The plaintiff alleges that, in February 2010, a doctor at Green Bay Correctional Institution gave the plaintiff a medical restriction against kneeling. The plaintiff alleges that this medical restriction was recorded on the outside of the plaintiff's cell door, such that all corrections officers could see it. Compl. ¶ 87. Despite this, between March 18, 2010 and June 26, 2010, several guards refused to serve the plaintiff his meals or provide him with his hypertension medication through the "trap" of his

6

Case 2:14-cv-01265-LA   Filed 10/09/15   Page 6 of 18   Document 36

cell unless he first complied with the kneeling requirement of the security precautions.[4] Compl. ¶¶ 88–100. The plaintiff refused to kneel, which resulted in him not receiving his meals or his medications. The plaintiff alleges that he lost 24 pounds during this time. These allegations state claims under the Eighth Amendment for the infliction of cruel and unusual punishment. See, e.g., Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015). The plaintiff will be allowed to proceed on such claims against the following defendants, who are the corrections officers who refused to provide him with meals and medicine unless he kneeled in violation of the medical restriction: Longsine, Dillenberg, DeBroux, VanLoo, Keiler, Giffin, Mommaerts, Segerstrum, Cummings, Hilbert, Preberg, Comeau, and Steudl.[5]

Next, the plaintiff asserts claims based on six incidents in which he was disciplined for using a pen in violation of the security precautions. One of the security precautions stated as follows: "You [Hashim] will not be given a pen, a crayon will be issued to you instead." Compl. ¶ 49. On six occasions, corrections officers wrote conduct reports

---

[4] The plaintiff alleges that, by March 26, 2010, the kneeling requirement in the security precautions had been changed to a sit-down requirement in order to accommodate his medical restriction. Compl. ¶ 110. However, the plaintiff alleges that various corrections officers continued to enforce the kneeling requirement through June 26, 2010. E.g., Compl. ¶¶ 88, 89, 91. I assume that there is a typo in paragraph 110 and that the security precautions were not changed until June 26, 2010.

[5] The plaintiff seeks to assert an Eighth Amendment claim against Erickson, the defendant who promulgated the security precautions. However, the plaintiff has not alleged that Erickson knew when promulgating the security precautions that the plaintiff had a medical restriction against kneeling or that he refused to modify the precaution once he learned of the restriction. Nor has the plaintiff alleged that Erickson personally denied him food or medication due to his refusal to kneel. Thus, the plaintiff has not alleged that Erickson knew of and disregarded an excessive risk to the plaintiff's health or safety and therefore has not stated an Eighth Amendment claim against him. E.g., Gevas, 798 F.3d at 480.

7

against the plaintiff for possessing or using a pen in violation of this precaution. A disciplinary committee found the plaintiff guilty of disobeying orders in connection with each incident and imposed discipline—usually a loss of recreation privileges for a certain number of days. The plaintiff seems to claim that writing conduct reports and disciplining him in connection with these incidents was unfair, as the security precautions did not state that he was prohibited from <u>using</u> a pen, only that staff would not <u>issue</u> him a pen. He thus seems to be attempting to state a claim for the deprivation of liberty without due process of law—more specifically, that he was punished without adequate notice of what constitutes prohibited conduct. See Rios v. Lane, 812 F.2d 1032, 1037–38 (7th Cir. 1987). To the extent that the plaintiff was punished for possessing a pen while he was in his cell, he does not have a claim. Although it is true that the security precautions state only that the plaintiff would not be given a pen, clearly the intent of the rule was that he not have a pen at all while he was in his cell, and that he would use a crayon instead. The plaintiff cannot seriously contend that he did not know that he was not supposed to possess or use a pen while he was in his cell. However, the plaintiff also alleges that he was punished for using a pen in the prison library that was given to him by library staff, Compl. ¶ 114, and that he was punished for using a pen while he was temporarily housed at the Grant County Jail that was given to him by the jail's staff, Compl. ¶ 157. It is at least arguable that the security precautions did not give the plaintiff adequate notice that he was prohibited from using a pen under either of these circumstances.

Still, before the plaintiff could proceed on a due process claim in connection with these two incidents, it must be the case that the discipline he received for those incidents deprived him of liberty. Yet the discipline Hashim received for the Grant County incident

8

was limited to loss of recreation privileges for seven days, Compl. ¶ 157, which does not rise to the level of an atypical and significant hardship. See Acre v. Walker, 139 F.3d 329, 336 (2d Cir. 1998) (finding that depriving inmate of exercise for several days does not implicate a liberty interest).[6] The punishment was more severe in the case of the library incident—Hashim received 90 days of disciplinary segregation. However, periods of disciplinary segregation lasting up to 90 days generally do not deprive an inmate of liberty. See Marion v. Columbia Correctional Institution, 559 F.3d 693, 697–98 & nn. 2–3 (7th Cir. (collecting cases holding that segregated confinement of 2 to 90 days does not implicate liberty interest); Lekas v. Briley, 405 F.3d 602, 612 (7th Cir.2005) (concluding that up to 90 days in segregation does not affect liberty). Moreover, the punishment for the library incident was for more than just using a pen—the same conduct report also charged him with disrespect and disruptive conduct. Compl. ¶ 117. These latter charges appear to have been issued after the plaintiff used coarse language in an argument with a corrections officer over the interpretation of the pen restriction. See Compl. ¶¶ 116–18. Thus, the entire 90-day stay in segregation cannot be considered punishment for using a pen while in the prison library. Accordingly, because the two pen incidents involving questionable interpretations of the security precautions did not result in deprivations of liberty, the plaintiff may not proceed on due process claims in connection with those incidents.

---

[6]In connection with other disciplinary infractions, Hashim was deprived of recreation for periods lasting longer than seven days, and the seven-day period associated with the Grant County incident seems to have run consecutively to those other periods. However, this does not transform the seven-day period into a deprivation of liberty, as those other periods of loss of recreation were imposed as punishment for different infractions.

9

Next, the plaintiff asserts a claim against defendants Longsine and Schultz in connection with their decision to deprive him of meal utensils for a period of 72 hours and then serve him food such as pudding, mashed potatoes, and soup, which the plaintiff would have to eat with his hands. Compl. ¶¶108–09. This is a valid claim: it alleges that Longsine and Schultz had no legitimate reason to deprive the plaintiff of utensils, that they did so only to see him humiliated when he tried to eat things likes mashed potatoes and soup with his hands, and that therefore they subjected him to cruel and unusual punishment. See Hudson v. Palmer, 468 U.S. 517, 530 (1984) (Eighth Amendment protects against "calculated harassment unrelated to prison needs"); Powers v. Snyder, 484 F.3d 929, 932–33 (7th Cir. 2007) (noting that conduct intended to humiliate a prisoner can amount to cruel and unusual punishment). Therefore, this claim may proceed.

Next, the plaintiff asserts a claim in connection with discipline he received for possessing property in excess of the two-grocery-bag limit that applies to inmates in segregation. Compl. ¶¶ 161–65. The plaintiff disputes that he actually possessed property in excess of the limit. However, the plaintiff was afforded a hearing on the charge of possessing excess property, at which he attempted to prove that all of his property fit into two grocery bags. He was found guilty after the hearing and sentenced to 30 days loss of recreation privileges. It is doubtful that 30 days loss of recreation implicates a liberty interest, but even if it does, the plaintiff was afforded due process: he was given a hearing and does not point to any procedural defects in the hearing process. Thus, the plaintiff has not stated a due-process claim in connection with this incident.

Finally, in Count III, the plaintiff argues that, under the Wisconsin administrative regulations governing prison discipline, penalties for infractions cannot run consecutively

10

to each other. Compl. ¶¶ 172–78. He argues that the various defendants who presided over his disciplinary hearings violated these regulations whenever they ordered a disciplinary penalty to run consecutively to another penalty. However, violations of state regulations are not actionable under § 1983, see Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003), and thus the plaintiff may not proceed on any claim involving the question of whether, under state law, disciplinary penalties may run consecutively to each other.[7]

In sum, having screened the claims in Counts I–III of the complaint, I conclude that the plaintiff may proceed on (1) a retaliation claim against Preberg; (2) Eighth Amendment claims against the corrections officers who denied him food and medicine when he refused to kneel in violation of his medical restriction (i.e., Longsine, Dillenberg, DeBroux, VanLoo, Keiler, Giffin, Mommaerts, Segerstrum, Cummings, Hilbert, Preberg, Comeau, and Steudl); and (3) Eighth Amendment claims against Longsine and Schultz for forcing the plaintiff to eat foods such as mashed potatoes and soup without earing utensils. All other claims in Counts I–III are dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1). Further, all claims asserted in Counts IV and V are dismissed without prejudice for improper joinder. All defendants other than Preberg,

---

[7]The plaintiff seems to contend that the consecutive/concurrent distinction is relevant to whether he was subjected to an atypical and significant hardship. See Compl. ¶ 178. However, even if it were, the most that would show is that the plaintiff's interest in liberty was affected by the consecutive penalties. It would not show that the consecutive penalties were imposed without due process of law. In this regard, the plaintiff does not identify any process he believes he was "due" before he could be subjected to consecutive disciplinary sentences. Thus, I can detect no viable federal claim arising out of the question of whether, under Wisconsin law, disciplinary penalties may run consecutively to each other.

11

Longsine, Dillenberg, DeBroux, VanLoo, Keiler, Giffin, Mommaerts, Segerstrum, Cummings, Hilbert, Comeau, Steudl, and Schultz will be dismissed from this case.

II. Motion for Reconsideration

Plaintiff has filed a motion for reconsideration of my April 22, 2015 order to the extent it denied his motion for a temporary restraining order and preliminary injunction. The plaintiff's original motion for a TRO and preliminary injunction requested three forms of relief. First, the motion requested that someone (it is not clear who) be ordered to provide Hashim with adequate medical care for injuries he sustained in an incident in which correctional officers used excessive force against him resulting in "a hole in his lower lip, a chipped tooth, cut gums, a walnut size knot, swollen facial tissue, and an exacerbated back injury." ECF No. 10. at 13. No allegations relating to this incident or the lack of adequate medical treatment for the resulting injuries appear in the complaint, and none of the named defendants in the complaint appear to have been responsible for providing Hashim with medical care while at Green Bay Correctional Institution. Moreover, the plaintiff has since been transferred to the Wisconsin Secure Program Facility. If the plaintiff believes that he is not receiving adequate medical care at that facility, he must file a new lawsuit naming as defendants the individuals at that facility who are responsible for providing him with such care. The plaintiff may then file a motion for preliminary relief in that action, if he believes that the requirements for obtaining such relief have been met.

Second, the original motion alleged that the plaintiff was being denied access to the courts because defendants Legois (a financial specialist at GBCI) and Olmanson (an attorney at the Department of Corrections) were preventing him from obtaining legal loans. The motion for preliminary relief asked that the defendants be ordered to cease collecting

12

funds from his prison account and that they be required to provide him with legal loans. This request is connected to a claim that Hashim sought to assert in Count V of the complaint. See Compl. ¶¶ 369–73. However, that count, and defendants Legois and Olmanson, have been dismissed from this case for improper joinder. If the plaintiff believes that the financial decisions of DOC officials are still denying him access to the courts, he must file a separate suit and, if he believes he is suffering irreparable harm, seek injunctive relief in that suit. He may not seek that relief in connection with this suit, which is now limited to claims based on the security precautions.

Finally, the plaintiff's original motion for injunctive relief sought an order requiring the defendants "to end their retaliatory actions against Hashim, suspend the disciplinary sanctions that are based on the mendacious allegations from prison staff and order the immediate transfer of the plaintiff to an out-of-state prison or one other than GBCI." ECF No. 10 at 15. To the extent that this request for relief was ever related to the claims alleged in the complaint, it no longer is. The surviving claims relate to the security precautions imposed in March 2010 at GBCI, and no injunctive relief would be appropriate based on those claims. Moreover, the plaintiff has been transferred to WSPF, and the complaint contains no allegations of retaliation occurring at that institution. To the extent that the plaintiff believes he is currently suffering irreparable harm because of ongoing retaliation occurring at WSPF, he must file a separate suit against the officials at WSPF who are subjecting him to such harm and seek injunctive relief as part of that suit.

Since the time when the plaintiff filed his original motion for preliminary injunctive relief, he filed supplemental motions in which he sought to expand his request for relief. See ECF Nos. 18 & 22. However, the relief requested in these supplemental motions is

13

not related to the subject of this suit (the March 2010 security precautions) and cannot properly be included in this suit. Therefore, I will not grant the relief requested in the supplemental motions.

In short, the plaintiff's motion for a TRO and preliminary injunction, and his motions to supplement that motion, were properly denied. For this reason, the plaintiff's motion for reconsideration of my denial of those motions is also denied.

III.  Motion for Recusal

The plaintiff has filed a motion requesting that I recuse myself from this case. Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In his motion, the plaintiff does not point to any facts suggesting that my impartiality might reasonably be questioned. Instead, he notes that I have entered various rulings that are adverse to him and have otherwise administered this case in ways that he does not like. See ECF No. 28 at ¶ 18. These are not grounds for recusal. Accordingly, I will deny the plaintiff's motion for recusal.

IV.  Motion to Appoint Counsel

The plaintiff has filed a motion for appointment of counsel. In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case —factually and legally—

14

exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

Here, the plaintiff has satisfied the threshold requirement of trying to find an attorney on his own. However, his filings reveal that he is competent to proceed on his own at this stage. Plaintiff's motion is based in part on my initial decision to reject the original complaint and order him to file a short amended complaint using the court's form. As indicated, I have reconsidered that decision and have instead allowed the plaintiff to proceed on the viable federal claims that the plaintiff properly joined in a single suit. Thus, the plaintiff no longer requires assistance in drafting his complaint. In any event, I conclude that the plaintiff is competent to litigate on his own the claims relating to the security precautions that I have allowed to proceed. Those claims are relatively straightforward and should not require extensive discovery, and the plaintiff is an experienced litigator. For these reasons, I will deny the plaintiff's motion to appoint counsel.

V.   Filing Fee

Finally, I address an administrative matter than the plaintiff has called to my attention. Before I denied the plaintiff's motion to proceed in forma pauperis on the basis of the three-strikes rule, I assessed, and the plaintiff paid, an initial partial filing fee of $3.60. In my order denying the motion to proceed in forma pauperis, I ordered the plaintiff to pay the full $400 filing fee. The plaintiff then paid that amount, which when combined

with his initial partial filing fee, resulted in him paying a total filing fee of $403.60. I will direct the Clerk of Court to refund the $3.60 overpayment.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion objecting to decision and order and to alter judgment (ECF No. 25) is **GRANTED** to the extent that the plaintiff is not required to file an amended complaint.

**IT IS FURTHER ORDERED** that plaintiff's motion to stay (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration (ECF No. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for recusal (ECF No. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time to file amended complaint (ECF No. 29) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (ECF No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court refund to the plaintiff the $3.60 overpayment of the filing fee.

**IT IS FURTHER ORDERED** that all claims contained in Counts IV and V of the complaint are dismissed without prejudice and that the allegations contained in Counts IV and V are deemed stricken from the complaint.

**IT IS FURTHER ORDERED** that all claims in Counts I–III asserted against any defendant other than Preberg, Longsine, Dillenberg, DeBroux, VanLoo, Keiler, Giffin,

16

Mommaerts, Segerstrum, Cummings, Hilbert, Comeau, Steudl, and Schultz are dismissed for failure to state a claim upon which relief can be granted.

**IT IS FURHTER ORDERED** that all defendants other than Preberg, Longsine, Dillenberg, DeBroux, VanLoo, Keiler, Giffin, Mommaerts, Segerstrum, Cummings, Hilbert, Comeau, Steudl, and Schultz are dismissed as parties to this case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

17

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 9th day of October, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge